UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Amber Cherry, ) | Civil Action No.: 4:22-cv-04598-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for SSI in June 2020. (Tr. 17). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in July 2021 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge(ALJ) issued an unfavorable decision on May 24, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 17-30). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in November 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in December 2022.

(ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in May 1991 and was twenty-nine years old on the date the application was filed. (Tr. 28). Plaintiff has no past relevant work. (Tr. 28). Plaintiff alleges disability originally due to schizophrenia, social anxiety, bipolar, and depression. (Tr. 122). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of May 24, 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 17-30):

1. The claimant has not engaged in substantial gainful activity since June 29, 2020, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following combination of severe impairments: borderline intellectual functioning, schizoaffective disorder (bipolar type), and unspecified anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can sustain concentration, persistence, and pace sufficient to perform simple, routine tasks in two-hour increments at no more than a GED reasoning level of 1. She is able to perform simple work-related decisions. She can have frequent interaction with supervisors, occasional interaction with coworkers, and no interaction with the public. She is able to tolerate few changes in a routine work setting defined as no team-oriented production goals and a static work environment.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 2, 1991, and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2020, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate Dr. Kofoed's examining opinions. (ECF No. 14 at 13-19). Within this argument, Plaintiff argues the ALJ could have recontacted Dr. Kofoed for clarification(ECF No. 14 at 14-15) and also argues that the ALJ was not allowed to rely on Dr. Jackson's findings because Dr. Jackson, a non-examining consultant, relied on records from a prior finally adjudicated claim/period and the prior finally adjudicated claim/period's records were not included in the instant record(ECF No. 14 at 19). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.     LEGAL FRAMEWORK**

    **1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**<u>Dr. Kofoed's Opinions</u>**

Plaintiff argues the ALJ failed to properly evaluate Dr. Kofoed's examining opinions. (ECF No. 14 at 13-19). Within this argument, Plaintiff argues the ALJ could have recontacted Dr. Kofoed for clarification(ECF No. 14 at 14-15) and also argues that the ALJ was not allowed to rely on Dr. Jackson's findings because Dr. Jackson, a non-examining consultant, relied on records from a prior finally adjudicated claim/period and the prior finally adjudicated claim/period's records were not included in the instant record(ECF No. 14 at 19).

For applications filed on or after March 27, 2017, such as this action, the regulatory

framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 416.920c(noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

In June 2021, Dr. Kofoed, Ph.D. examined Plaintiff and opined limitations. (Tr. 394-398). Under "presenting complaints," Dr. Kofoed noted:

7

> She reports a long history of anxiety and social discomfort. She reports that she is very uncomfortable in new or public situations. She does not go places by herself. She feels anxious, overwhelmed, and flustered in those types of environments. She currently receives mental health care through the Mental Health Center in Laurens, South Carolina. The records I was provided from that facility mentioned diagnoses of "schizoaffective disorder, bipolar type and unspecified anxiety disorder." She does report hallucinatory activity which she described as being a daily experience. She will see shadows that frighten her and startle her. She will hear whispering type voices that she has difficulty understanding or "making out." In general, she describes these as being derogatory in nature, however. She does not drink alcohol or use illegal drugs. Currently, she takes no medications, but in the past has been on Depakote, Geodon, and Adderall among others. She reports that she is not on medications because she disliked the side effects of those medications.

(Tr. 394). Plaintiff reported she was in special education and was a "D" student. (Tr. 394). Plaintiff reported she received disability income as a child . In her early 20s, she reported her disability was discontinued in part because her then-husband would not allow her to go to medical appointments. (Tr. 394-395). At the age of 30, Plaintiff has never had a driver's license. (Tr. 395). Plaintiff has one friend that she texts and the friend comes over once a month. Plaintiff's mother visits frequently to help with chores. (Tr. 395). Upon exam:

> She appeared mildly overweight for her height but reported that her weight has been fairly stable in recent months. She reported that her appetite has been poor. She was anxious and maintained a rather flat affect. She seemed somewhat cautious and slightly guarded. Several times during the interview, she glanced to the side of the room "as if she were seeing something there." At one point, she made the comment "that she thought she saw something standing in the window." This appeared to represent possible internal stimuli. Again, she was anxious. She was not tearful. She denied suicidal or homicidal plans or intentions. She does endorse both visual and auditory hallucinatory activity on a regular basis.

(Tr. 395). As to cognition, Plaintiff put forth good effort on tasks and was eager to do well. Testing suggested poor recall for recently learned verbal information. (Tr. 395). As to social functioning, Dr. Kofoed opined:

> She presents with **very poor social interaction skills**. She is uncomfortable in crowds and around new people. She does not go to grocery stores by herself or to

> Walmart by herself. She feels flustered and anxious in those types of situations. She describes both **visual and auditory hallucinatory** activity. She reports that these hallucinations happen daily. She likely would be **quite uncomfortable around co-workers, supervisors or customers**. She likely would be **distracted** by sounds in her environment. Today, she seemed distracted by internal stimuli. She frequently glanced off to the side of the room, and at one point reported that she "could see something standing in the window." It would appear there are **significant impairments in her social functioning**.

(Tr. 396)(emphasis added). As to concentration, persistence, and pace, Dr. Kofoed found:

> Today, she struggled with basic arithmetic tasks and she did poorly with basic tracking and concentration. Recall was poor for both verbal and nonverbal information. I believe she would be **prone to error on even simple repetitive tasks**, especially in a hectic public setting. She would be flustered by extraneous stimulation and she may tend to make mistakes or to be distracted. Her **persistence over the course of the day would likely be poor**.

(Tr. 396)(emphasis added). As to Dr. Kofoed, the ALJ found:

> The consultative examiner remarked that the claimant has no more than mild impairment in activities of daily living. She likely would be quite uncomfortable around co-workers, supervisors, or customers. She likely would be distracted by sounds in her environment. It would appear there are significant impairments in her social functioning. She would be prone to error on even simple repetitive tasks, especially in a hectic public setting. She would be flustered by extraneous stimulation, and she may tend to make mistakes or to be distracted. Her persistence over the course of the day would likely be poor (C6F).
>
> The remarks of the consultative examiner are **partially persuasive**. He indicates that the claimant has limitations with socialization, work environment, and completing tasks, for example.
>
> Consistent with these suggestions, I have included several mental restrictions in the residual functional capacity. The consultative examiner's remarks are supported by portions of his consultative examination. For instance, at the consultative examination, she had abnormal clinical findings regarding anxiousness, affect, possible response to internal stimuli, recall, serial 7 subtractions, socialization, tracking, and concentration (C6F). The consultative examiner's remarks are consistent with portions of the record. For example, the claimant has longitudinal history of mental impairments with formal mental health care, diagnoses of mental conditions, and prescriptions for mental medications. She consistently endorses symptoms of mental impairments that hinder her capacity to carry out routine daily activities. During mental health visits in 2019 and 2020, she had abnormal clinical

9

>  findings regarding affect, eye contact, mood, and child-like presentation (C1F, C8F, C9F, C5E, testimony).
>
>  However, the consultative examiner's remarks are **vague without stating functional limitations that directly correspond to particular restrictions in a residual functional capacity.** Furthermore, **portions of his consultative examination do not support his opinions which makes renders[sic] the opinions somewhat internally inconsistent.** For example, at the consultative examination, she had normal findings related to punctuality, participation in the evaluation alone, dress, hygiene, lack of tearfulness, putting forth good effort, and eagerness. Although diminished, she was ultimately able to recall information regarding the date, day of the week, Presidents, recently learned words, and recently copied geometric shapes (C6F). Likewise, portions of the record are inconsistent with his proposed limitations. For instance, during mental health visits in 2019 and 2020, the claimant generally reported having **normal sleep, interests, energy, and appetite.**[3] During mental health visits, she had normal findings regarding appearance, attitude, behavior, associations, thought process, alertness, and orientation. The mental health providers in 2019 and 2020 identified the claimant with average fund of knowledge. She consistently denies having suicidal ideation, homicidal ideation, delusions, and obsessions (C1F, C9F). Although her daily activities are somewhat limited, and she requires assistance to complete them, she can do daily activities related to living at home with a male friend and two young children, childcare, personal care activities, simple meal preparation, some shopping in stores, household chores, hobbies, interacting with family and a high school friend, accompanying her children to appointments, and riding on bus with minimal passengers (C1F, C5E, C6F, testimony). A State Agency psychological medical consultant specifically considered the consultative examiner's opinions in light of the entire record and found the opinions less than persuasive (C7A).

(Tr. 26-27)(emphasis added).

      Plaintiff argues Dr. Kofoed's exam itself produced several abnormal and several normal

---

[3] The ALJ repeated the finding "normal sleep, interests, energy, and appetite" five times throughout the ALJ's opinion. Without providing an explanation, the ALJ appears to value more that Plaintiff has "normal sleep, interests, energy, and appetite," than the consultative and treating exams of Plaintiff responding to internal stimuli, hallucinations, abnormal affect, eye contact, mood, and child like presentation, with the ALJ citing Exhibits C1F, C8F, C9F, C5E, and Plaintiff's testimony. (Tr. 26, 21, 23, 24, 25, 27). The above quoted findings, read as a whole, appear to imply that Plaintiff sleeping and eating normally is inconsistent with the social, environment, and concentration limitations opined by Dr. Kofoed, which were based on exam findings of anxious, flat affect, somewhat cautious/slightly guarded, possible internal stimuli, and endorsement of visual and auditory hallucinatory activity on a regular basis, which is also supported by the records of treating providers having similar exam findings. (Tr. 26-27).

exam findings, as mental exams often do because of how many domains those exams comprise. (ECF No. 14 at 16). The ALJ used the fact of abnormal and normal exam findings to state that Dr. Kofoed was "somewhat internally inconsistent." (Tr. 26). However, the ALJ also found that Dr. Kofoed's "remarks" were supported by and consistent with "portions" of Dr. Kofoed's exam and "portions" of the record from treating providers and Plaintiff herself. Some of Dr. Kofoed's opinions were necessarily found persuasive because they were supported and consistent, in alignment with 20 C.F.R. § 416.920c(a), (b)(2) factors. Yet, the ALJ does not provide the court with an explanation of which of Dr. Kofoed's "remarks" were persuasive and thus considered by the ALJ in formulating the RFC assessment[4] and which were not.[5] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, * 7. The ALJ's findings further lack the capability of meaningful review because the ALJ also stated that Dr. Kofoed's "proposed limitations" were inconsistent with "portions of the record" but again did not extrapolate which limitations were consistent and which were inconsistent. (Tr. 26-27). Moreover, the ALJ found that Dr. Kofoed's remarks "are vague" without saying which of the remarks were vague.

The ALJ cited Exhibits C1F, C8F, C9F, C5E as consistent with Dr. Kofoed's exam. (Tr. 26-27). Exhibit C1F is treatment with mental health in February 2020 where Plaintiff noted she is seeing

---

[4] The RFC assessment is required to consider statements from medical sources. 20 C.F.R. § 404.1545.

[5] The ALJ found Dr. Kofoed partially persuasive; the ALJ found some of Dr. Kofoed's "remarks" supported and consistent. However, telling is, neither party can actually state, for example, whether the ALJ rejected Dr. Kofoed's CPP opinions and accepted social interaction opinions because the ALJ never stated or explained if the ALJ did so. The ALJ never explained which opined limitations were the ones the ALJ found consistent and supported and which were not.

shadows and hearing whispers. (Tr. 371). Exam stated auditory/visual hallucinations, anxious mood, inappropriate affect, and "superficially matter of fact." (Tr. 371). Plaintiff was diagnosed with schizoaffective disorder bipolar type. (Tr. 371). In December 2019, Plaintiff reported visual hallucinations of shadow man and shadow cat to mental health. (Tr. 373). Exam included auditory and visual hallucinations and superficial affect. (Tr. 373). In May 2020, Plaintiff was seen by mental health. Plaintiff was not tolerating medication and kept seeing shadow man and shadow cat and hearing inaudible voices. Plaintiff was willing to take older medications to see if she could tolerate side effects. Energy was noted as decreased. Exam was visual hallucinations, anxious mood, and very childlike affect. (Tr. 375). Exhibit C8F are records outside of the relevant time period by seven years. (Tr. 402-405).  Exhibit C9F are the same December 2019, February 2020, and May 2020 mental health records as in Exhibit C1F. (Tr. 407-416). Exhibit C5E is Plaintiff's own function report reporting: fear of people, her mother helping with her children daily and her housework, never going outside, shopping with her mother once or twice a month, not able to handle money, does not spend time with others, does not get along well with others, and cannot pay attention for very long. (Tr. 287-294).

Given the record, the court cannot meaningfully review the ALJ's findings as to Dr. Kofoed, especially as to the most important 20 C.F.R. § 416.920c(a), (b)(2) factors, supportability and consistency.

Likewise, one of the ALJ's reasons for discounting Dr. Kofoed's opinions is likely a misstatement of the applicable law and not supported by substantial evidence; it is supportive of remand but not the primary basis for remand as discussed above. The ALJ found Dr. Kofoed's

opinions "vague[6] without stating functional limitations that directly correspond to particular restrictions in a residual functional capacity." (Tr. 27). An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. § 416.946(c)). There is no SSA requirement that a doctor state his opinion in functional terms that "directly correspond" to the language of RFC findings. In fact, the effective regulation for applications after March 2017, states the opposite. A statement about what an RFC is "using our programmatic terms" about functioning is evidence that is inherently neither valuable nor persuasive such that an ALJ is not required to articulate any analysis about the evidence. 20 C.F.R. § 416.920b(c)(3)(vi). "[D]escriptions" about functional abilities/limitations is what should be contained in medical source statements. 20 C.F.R. § 416.920b(c)(3)(vi).

As a sub-issue, Plaintiff argues that the ALJ was not allowed to rely on Dr. Jackson's findings because Dr. Jackson, a non-examining consultant, summarized records from a prior finally adjudicated claim/period and the prior finally adjudicated claim/period's records were not included in the instant record. (ECF No. 14 at 19). Dr. Jackson's opinions were dated June 2021; the period

---

[6]     As a sub-issue, Plaintiff argues the ALJ should have recontacted Dr. Kofoed if his opinions were unclear to the ALJ. (ECF No. 14 at 14). An ALJ is only required to seek additional or clarifying information if information in the record, regardless if conflicting, is inadequate to determine whether Plaintiff is disabled. 20 C.F.R. § 416.920b. Even if inconsistent evidence is presented, the ALJ has the discretion to make a determination based on the evidence in the record before him. Under § 416.920b, the ALJ is only required to seek additional evidence or clarification if the ALJ cannot reach a conclusion about whether the claimant is disabled. Here, the ALJ did not have to recontact Dr. Kofoed or any other physician for additional information or clarification because the ALJ had sufficient information to determine the issue of disability in the record before him. The record was fully developed and sufficient for the ALJ to render a disability determination.

the instant ALJ adjudicated was from June 29, 2020 to May 24, 2022. (Tr. 129, 29-30). The ALJ completed the duty of analyzing opinions within the record time period of June 2020 to May 2022, which included Dr. Jackson's opinion.  Plaintiff quotes page 27 of the ALJ's opinion but this was the persuasiveness finding of the consultative examiner, not of Dr. Jackson. (ECF No. 14 at 18). Exhibit C7A is Dr. Jackson's opinion. The ALJ analyzed this opinion at pages 25-26 of the ALJ's opinion. The ALJ found Dr. Jackson's opinions "consistent with the conclusions suggested by the evidence in this case and are persuasive." (Tr. 26). Plaintiff misconstrues HALLEX § I-2-1-13-F. The HALLEX quote in Plaintiff's brief, "when <u>an ALJ</u> relies on information from a prior claim file," is inapplicable here because Dr. Jackson's opinion is in 2021 and Dr. Jackson's opinion is not from a prior claim file. (ECF No. 14 at 19). Plaintiff also argues that the ALJ gave greater deference to Dr. Jackson and by doing so relied on the prior claim file; this is not logically accurate. HALLEX I-2-1-13 does not further support remand for Plaintiff here.

As discussed above,  the court cannot find that the ALJ's decision regarding the evaluation of opinions is supported by substantial evidence, and remand is appropriate.  Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). Upon remand, the ALJ should take into consideration Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case.  The court cannot, however, conduct a proper review based on the record

presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

|  |  |
|---|---|
| October 3, 2023<br>Florence, South Carolina | s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |